J-S80003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VAUGHN DANTE TYNER | : | |
| | : | |
| Appellant | : | No. 3780 EDA 2016 |

Appeal from the Judgment of Sentence September 15, 2016
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0003314-2016

BEFORE:  BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 14, 2019**

Vaughn Dante Tyner's appeal from the judgment of sentence of seventy-two hours to six months of imprisonment, plus community service, fines, and costs, after he was convicted of driving under the influence ("DUI"), returns to this Court following remand.[1]  We affirm.

The trial court summarized the underlying facts as follows.

> On February 19, 2016, Trooper [Tyrone] Bradley was working the 11 pm to 7 am shift along with his partner Trooper Woody.  Trooper Bradley was patrolling I-95 southbound in a marked state police vehicle, when he observed a red mustang in the middle lane, traveling at [a] high rate of speed in the area of Exit 3, which is located in Chester, Delaware County, Pennsylvania.  Further, Trooper Bradley observed that the vehicle weaved within its lane of travel before crossing over the dotted white lines with the passenger-side tires, and then began

---

[1] On May 5, 2018, this Court remanded for the filing of new briefs.  The additional briefing was completed when the Commonwealth filed its brief on November 5, 2018.

driving in between the middle and right lanes. Trooper Bradley followed the vehicle and clocked it going 83 miles per hour in a 55 mile[-]per[-]hour zone.[1]

_____

[1] [The Commonwealth offered into evidence] a Pennsylvania Department of Transportation, the Bureau of Motor Vehicles certificate of speedometer accuracy. [Trooper Bradley] further explained that his vehicle's speedometer was tested and calibrated on September 2, 2015.

Trooper Bradley subsequently noticed the red mustang, which was still traveling at a high-rate of speed, cross the white line a second time. At this time Trooper Bradley activated his lights and sirens and initiated a traffic stop on South I-95 at mile marker 0.3, which is located in Lower Chichester Township, Delaware County, Pennsylvania. The driver complied by pulling over.

Next, Trooper Bradley, along with Trooper Woody approached the red mustang. Trooper Bradley approached the driver, who[m][sic] he learned to be [Appellant], and introduced himself as a Pennsylvania State Trooper. Trooper Bradley asked Appellant for his driver's license, registration, and insurance card, while proceeding to explain to Appellant his reasoning for pulling him over. Trooper Bradley observed that Appellant did not appear to be focused when locating the requested documents. Moreover, Appellant asked Trooper Bradley to repeat the documents needed.

While speaking with Appellant, Trooper Bradley detected an odor of alcohol on his breath. Additionally, Trooper Bradley detected a strong odor of burnt marijuana coming from within the vehicle, and observed that Appellant's eyes were bloodshot, red, glassy, and that his pupils were dilated. When asked about the odor of marijuana, Appellant stated that there was no marijuana in the vehicle, but that he had smoked it in the car with some friends earlier that evening. When asked if he had consumed any alcoholic beverages that evening, Appellant stated that he had one tequila sunrise and then one double-shot of rum and coke.

At this point, Trooper Bradley asked Appellant to exit the vehicle to perform standardized field sobriety tests. Trooper

Bradley started with the horizontal gaze nystagmus test. Next, Trooper Bradley asked Appellant to perform the walk-and-turn test. In regard to the walk-and-turn test, while giving Appellant the instructions, Trooper Bradley observed that Appellant visibly swayed, [and] could not keep his balance. During the first series of [nine] steps, Trooper Bradley observed that Appellant lost his balance, did not walk in a straight line, raised his arms, did not touch heel-to-toe, and completed an improper turn. On the second series of steps, there was no heel-to-toe, Appellant raised his arms for balance, did not walk in a straight line, and did not count aloud as instructed.

Next, Trooper Bradley conducted the on[e]-legged stand test. Again, he walked through the instructions with Appellant. During the test, Trooper Bradley observed that Appellant visibly swayed, put his foot down several times, could not keep his balance and raised his arms. At this point, Trooper Bradley stopped the administration of the field sobriety tests.

Based on Trooper Bradley's observations of Appellant on the road, his contact of Appellant's person, Appellant's performance on the field sobriety tests, and Appellant's admission to consuming alcohol and smoking marijuana, Trooper Bradley believed that Appellant was incapable of safe driving and placed him under arrest for driving under the influence.

Trial Court Opinion, 3/6/17, at 2-4 (citations omitted).

Appellant proceeded to a non-jury trial on DUI—general impairment, 75 Pa.C.S. § 3802(a)(1), and DUI—controlled substance (impairment), 75 Pa.C.S. § 3802(d)(2),[2] as well as several summary offenses. The trial court

---

[2] The Commonwealth had originally charged Appellant with a violation of 75 Pa.C.S. § 3802(d)(1)(iii) (DUI—controlled substance (metabolite)), but did not proceed on that count after the trial court excluded blood test results under ***Birchfield v. North Dakota***, 136 S. Ct. 2160 (2016).

found Appellant guilty of both DUI charges.[3]  Appellant was sentenced as indicated above, and filed a timely post-sentence motion.  After its denial, Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

In this Court, Appellant's counsel filed an application to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We denied counsel's application to withdraw and remanded for counsel to file an advocate's brief upon the determination that Appellant was able to make a non-frivolous argument that the evidence was insufficient to sustain his DUI convictions in light of this Court's decision in ***Commonwealth v. Gause***, 164 A.3d 532 (Pa.Super. 2017) (*en banc*).

On October 22, 2018, after we granted three extensions of time to do so, Appellant filed the new brief late.  Therein, he framed the following questions for our review.

> 1)    Whether there was insufficient evidence to support the trial court's finding of guilt on Count 1 — DUI-general impairment because the Commonwealth failed to present sufficient evidence that [Appellant] was incapable of safely operating a motor vehicle because of alcohol consumption?
>
> 2)    Whether there was insufficient evidence to support the trial court's finding of guilt on Count 4 — DUI-controlled

---

[3] Appellant was also convicted of exceeding the applicable speed limit by twenty-eight miles per hour and fined accordingly.  75 Pa.C.S. § 3362(a)(2), (c).

substances when the Commonwealth failed to present sufficient evidence that [Appellant] was incapable of operating a motor vehicle because of drug consumption?

3) Whether Trooper Bradley's opinion testimony was improperly admitted as he was not qualified as an expert in either alcohol or drug consumption and their individual effects on the body.

Appellant's brief at 5 (unnecessary capitalization omitted).

The following principles apply to Appellant's sufficiency claims. Evidentiary sufficiency is a question of law and "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Williams***, 176 A.3d 298, 305 (Pa.Super. 2017).

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

***Id***. at 305-06.

Appellant was convicted under the following provisions of the DUI statute.

**(a) General impairment.**—

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after

- 5 -

imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

. . . .

**(d) Controlled substances.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

. . . .

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802.

We have no hesitation in concluding that the evidence was sufficient to prove that Appellant was impaired to the point that he was incapable of driving safely. Appellant, exceeding the speed limit by nearly thirty miles per hour, weaved within his lane and outside of it. N.T. Trial, 8/15/16, at 9-10. Appellant had difficulty focusing when Trooper Bradley conducted the traffic stop and asked for Appellant's documentation. *Id*. at 11-12. When asked to exit his vehicle, Appellant was slow, sluggish, and unsure of his footing. *Id*. at 13. Further, Appellant failed the standardized field sobriety tests. *Id*. at 15-16. Thus, the Commonwealth established the elements of impairment and inability to drive safely. *See*, *e.g.*, *Commonwealth v. Mobley*, 14 A.3d 887, 890 (Pa.Super. 2011) (holding impaired ability to

drive safely was proven where the defendant failed field sobriety tests, smelled of alcohol, and ran a stop sign with a police officer in plain view).

However, the Commonwealth was also obligated to offer causation evidence. Specifically, to meet its burden of proof under subsection (a)(1), the Commonwealth was required to prove beyond a reasonable doubt that Appellant consumed a sufficient amount of alcohol to cause his impairment. *Mobley*, *supra* at 890. Likewise, to establish that Appellant was guilty of violating subsection (d)(2), the Commonwealth had to prove that Appellant's inability to drive safely was caused by the influence of a drug or combination of drugs.[4] *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa.Super. 2012).

In proving the causation elements of the offenses, expert testimony is not always needed; rather, the necessity for such evidence depends on the specific facts of the case. *Commonwealth v. Griffith*, 32 A.3d 1231, 1238 (Pa. 2011). "[A] police officer who has perceived a defendant's appearance

---

[4] Our legislature has recognized that a person may be unable to drive safely from a combination of alcohol and drugs where neither the alcohol nor drugs alone caused substantial impairment. 75 Pa.C.S. § 3802(d)(3). *See also Commonwealth v. Plybon*, 421 A.2d 224, 226 (Pa.Super. 1980) ("[A] person may consume a small amount of alcohol which by itself would not cause the person to violate [the DUI statute] and yet when combined with a controlled substance would render that same person incapable of safe driving in violation of [subsection (d)(3)]."). Although Appellant was charged with a subsection (d)(3) violation, and the evidence seemingly supports a conviction under that subsection more strongly than under (a)(1) or (d)(2), the Commonwealth without explanation declined to pursue the subsection (d)(3) count at trial. *See* N.T. Trial, 8/15/16, at 3.

and conduct is competent to express an opinion, in a prosecution for [DUI] as to the defendant's state of intoxication and ability to safely drive a vehicle." ***Commonwealth v. Butler***, 856 A.2d 131, 137 (Pa.Super. 2004). While testimony generally is required regarding marijuana impairment, it is unnecessary where "the circumstances are so telling of recent marijuana use as to form a clear connection between marijuana use and impairment." ***Gause***, ***supra*** at 537.

In this case, the only evidence of the amount of alcohol Appellant consumed was his admission that he had one tequila sunrise and one double rum and Coke at an undisclosed time before driving. N.T. Trial, 8/15/16, at 13. There is no record evidence concerning the amount of marijuana Appellant smoked; as for the timing, Appellant indicated that "he smoked [marijuana] inside the vehicle with his friends earlier that night." ***Id***. However, at the time of the traffic stop, Trooper Bradley noticed both the strong smell of burnt marijuana "coming from inside the vehicle," and the smell of alcohol "on [Appellant's] breath and coming from within the vehicle." ***Id***. at 12. The trooper observed that Appellant's "eyes were bloodshot, red, glassy, and his pupils were dilated." ***Id***. Further, the trooper noted Appellant's sluggishness and unsteadiness discussed above.

Trooper Bradley was neither offered nor accepted as an expert witness. Indeed, although Trooper Bradley offered lay opinion testimony that Appellant was incapable of unsafely driving, no opinion testimony of any

kind was elicited from or offered by the trooper as to the **cause** of Appellant's impairment. Trooper Bradley testified to having personal and professional experience observing people under the influence of alcohol, controlled substances, or both. *Id*. at 6-8. However, he did not indicate what his experience has taught him about the observable signs of alcohol impairment and impairment caused by controlled substances, or whether there are indicia of impairment unique to one type of impairment or the other. The full extent of Trooper Bradley's opinion testimony was as follows:

> Based on my observations of him behind the steering wheel driving, unable to maintain lanes, his excessive speed[;] my contact with him, bloodshot eyes, glassy eyes, dilation of pupil, unable to walk, unsure of his footing[;] and basically his admissions of consuming alcoholic beverages and smoking marijuana[;] I believed that he was incapable of safe driving, and I placed him under arrest for driving under the influence.

*Id*. at 17.

Appellant argues that the Commonwealth's evidence failed to show that Appellant used marijuana recently, and there was no indication that marijuana or paraphernalia was in the car at the time of the traffic stop. Appellant's brief at 15. Appellant contends that the finding that Appellant was under the influence of marijuana to the degree that he could not safely operate his vehicle cannot be based just upon the lingering odor in marijuana in the car and his admission that he smoked it in the car earlier that evening. *Id*. Appellant insists that, under these circumstances, the Commonwealth was required to call an expert "to testify as to the effects

- 9 -

marijuana has on the body and to show a clear connection between marijuana and impairment." *Id*. at 15-16. Along the same lines, Appellant asserts that the evidence failed to show "a clear connection between alcohol consumption and the ability to safely operate a motor vehicle." *Id*. at 16.

We find our resolution of the issue informed by this Court's decision in *Gause*, *supra*. In that case, when Gause was stopped for driving without illuminated taillights, the officer smelled alcohol and Gause admitted to having consumed beer. *Id*. at 535. Gause also exhibited eyelid tremors, which the officer indicated was indicative of marijuana use. *Id*. at 536. Another officer who had administered sobriety tests opined that Gause was impaired by both alcohol and marijuana. *Id*. at 537.

On appeal, this Court examined Gause's convictions under subsections (a)(1) and (d)(2) of the DUI statute. This Court first held that the lay opinion testimony offered by the officers as to causation was improper. We determined that, based upon the lack of physical evidence of marijuana use, and "no admission from Gause that he had recently smoked marijuana," the officer's "observations did not obviate the necessity of an expert to explain whether 'eye tremors,' or 'body tremors,' would indicate that someone was under the influence of marijuana and that this impaired his ability to safely drive[.]" *Id*. at 539 (emphasis omitted). This was because "[u]nlike staggering, stumbling, glassy or bloodshot eyes, and slurred speech, 'the ordinary signs of intoxication discernable by a layperson,' eye tremors are

not an ordinary sign of ingestion of a controlled substance, in particular, marijuana." *Id*. at 539. Thus, we concluded that the Commonwealth failed to prove that Gause "was under the influence of a drug to a degree that his ability to safely drive was impaired." *Id*. at 540.

Further, this Court concluded that the record did not support a finding that Gause was under the influence of alcohol to a degree that rendered him incapable of driving safely. Although the officers detected the odor of alcohol when questioning Gause, and Gause admitted that he had one twelve-ounce light beer, Gause "did not exhibit the typical indicators of alcohol impairment; there was no evidence of erratic driving, slurred speech, difficulty in handing over required documents, and no inability to stand without support." *Id*. at 541. Accordingly, this Court vacated Gause's convictions under both subsections (d)(2) and (a)(1).

The presence in the instant case of the circumstances notably absent in *Gause* leads us to conclude that the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to sustain Appellant's convictions. Unlike the defendant in *Gause*, Appellant **did** admit that he had smoked marijuana that evening; Trooper Bradley **did** smell burnt marijuana in Appellant's vehicle; Appellant **did** drive unsafely; and Appellant **did** exhibit ordinary signs of marijuana use discernable by a layperson, namely glassy, bloodshot eyes, dilated pupils, and lack of focus in retrieving

his paperwork. We conclude that, under the circumstances of this case, the fact finder was able to ascertain the causation element through reasonable inferences from Trooper Bradley's lay testimony. *See Commonwealth v. Matthews*, 389 A.2d 71, 73 (Pa. 1978) ("[C]ausation need not be established by direct evidence but may follow from circumstantial evidence of a reliable and persuasive nature."); *see also Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1267 n.5 (Pa.Super. 2010) ("[I]if a police officer stopped a driver who was driving erratically, and the driver then rolled down his window and greeted the officer through a cloud of marijuana smoke, showing the typical signs of heavy marijuana use, it would be difficult to imagine that expert testimony would be necessary to establish the link between the erratic driving and the driver's marijuana use.").

Likewise, unlike the officers in *Gause* who expressly indicated that the defendant did not show the usual signs of alcohol impairment, Trooper Bradley smelled alcohol on Appellant's breath and Appellant exhibited typical indicia of alcohol impairment, namely glassy and bloodshot eyes, lack of balance, stumbling, poor performance on sobriety tests such that Appellant "was about to fall over." N.T. Trial, 8/15/16, at 15. From this, the trial court was able to conclude that Appellant's alcohol consumption had caused him to be impaired to the point that he was unable to drive safely. *See*, *e.g.*, *Commonwealth v. Hartle*, 894 A.2d 800, 804–05 (Pa.Super. 2006) (holding evidence sufficient to establish DUI—general impairment where the

defendant "ran a stop sign, smelled of alcohol, had bloodshot and glassy eyes, was unsteady on his feet, refused to perform field sobriety tests, and refused a breath test"); **Butler**, **supra** at 136-37 (concluding evidence that the defendant who had been driving erratically smelled of alcohol, had bloodshot eyes and slurred speech, and was unable to stand, was sufficient to establish the defendant's alcohol impairment rendered him unable to drive safely). Therefore, both of Appellant's sufficiency challenges fail.

Appellant's final issue on appeal is that Trooper Bradley's opinion testimony was improperly admitted. **See** Appellant's brief at 5. Appellant did not make this objection at trial, and therefore waived the issue.[5] **See**, **e.g.**, **Commonwealth v. Whitaker**, 878 A.2d 914, 920 n.3 (Pa.Super. 2005) ("To preserve a claim for review, the defendant must make a timely and specific objection to the introduction of the challenged evidence at trial."). As such, Appellant's final issue merits no relief.

Judgment of sentence affirmed.

_____

[5] In any event, to the extent that Trooper Bradley offered opinion evidence, it was lay opinion testimony the likes of which this Court has held to be admissible in similar circumstances. **See Butler**, **supra** at 137 (noting officer observing DUI defendant is competent to opine as to intoxication and driving ability); **see also Commonwealth v. Davies**, 811 A.2d 600, 603 (Pa.Super. 2002) ("A police officer may testify to his or her opinion as to a suspect's alcohol-induced intoxication and the suspect's ability to drive safely when the officer has observed the suspect's appearance and acts. . . . We find no basis upon which to distinguish opinion testimony of drug-induced intoxication from opinion testimony of alcohol-induced intoxication where the witness is personally familiar with the effects of narcotics.") (cleaned up).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/14/19</u>